## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOAQUIM TAVAREZ,

                Plaintiff ,

   v.

NAUGATUCK BOARD OF EDUCATION,

             Defendant.

3:08-cv-725 (CSH)

## RULING ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

## I.      INTRODUCTION

Plaintiff Joaquim Tavares[1] brings this action against his employer, Naugatuck Board of Education, alleging employment discrimination and infliction of emotional distress.  Defendant now makes a Motion for Summary Judgment [Doc. 24], seeking a summary disposition of all claims Plaintiff alleges in his Complaint.  For the reasons given below, summary judgment against those claims is appropriate.

The following facts are accepted by both parties.  Plaintiff has been employed by Defendant for more than thirty-five years as a teacher and administrator.  He is of Portuguese ancestry and was born on June 26, 1947.  He served as Defendant's Athletic Director from 2000 to 2006.  While

---

[1] Although Plaintiff's name is spelled "Tavarez" on the docket report for this action, and therefore the above caption uses that spelling, the parties are in agreement that the correct spelling is "Tavares," and that spelling will be used throughout this Ruling.

working for Defendant, Plaintiff applied for several principal and assistant principal positions but was not hired for them.  He has for some years been involved in an organization called the Portuguese Action Committee (PAC); persons of Portuguese ancestry make up about 20% of the population of the Town of Naugatuck.

In June 2006, Defendant combined the position of Athletic Director with the position of Director of Adult Education, purportedly to save money.[2]  Plaintiff applied for the position.  He had experience as an athletic director, but no experience with adult education.  Two candidates, Plaintiff and Thomas Pompei, were interviewed by the full Board for that position on or about June 15, 2006. Pompei is of Italian ancestry and at that time was approximately thirty-one years old.  He had five years' experience as an adult education teacher and experience coaching athletics, but had not been an athletics administrator.  Plaintiff alleges that at his interview, Board member David Heller asked him a question that suggested to him a concern about his age, but neither he nor Heller remembers the specifics of that exchange.   Defendant hired Pompei for the position.  After that, Plaintiff continued to work for Defendant, but no longer as Athletic Director, resulting in a reduction in income of $6,800 per year.

On May 12, 2008, Plaintiff filed the present Complaint.  The Complaint contains ten counts: (1) retaliation for his involvement in the PAC in violation of the First Amendment to the United States Constitution; (2) retaliation for his involvement in the PAC in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; (3) retaliation for his involvement in the PAC in violation of state or federal law (it is not clear what statute is intended); (4) violation of his First

---

[2]  In his Complaint, Plaintiff makes allegations about earlier failures to promote, but in his memorandum in opposition to the present Motion, he relies entirely on the failure to promote of June 2006.

Amendment right to freedom of association; (5) racial discrimination in violation of the Connecticut

Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60 *et seq.*; (6) age discrimination

in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; (7)

racial discrimination in violation of Title VII; (8) age discrimination in violation of CFEPA; (9)

intentional infliction of emotional distress; and (10) negligent infliction of emotional distress.

Defendant's Memorandum of Law in support of its Motion for Summary Judgment ("Supp.

Memo.") argues that each of Plaintiff's claims is either legally infirm or not supported by the

evidence necessary to defeat summary judgment.  Plaintiff, in his memorandum in opposition to the

Motion ("Opp. Memo."), does not defend all counts in the Complaint.  Plaintiff provides no defense

of Counts Two and Three, thereby waiving any opposition to summary judgment on those counts.

*Schaefer v. Town of Victor,* 457 F.3d 188, 210 (2d Cir. 2006) (party waived a claim for summary

judgment purposes by failing to brief it).  Accordingly, summary judgment will be entered in

Defendant's favor on Counts Two and Three, on the ground that those claims have been waived and

abandoned by the Plaintiff.


## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party

bears the burden of demonstrating that no genuine issue exists as to any material fact.  *See Celotex*

*Corp v. Catrett*, 477 U.S. 317, 323-25 (1986).

Materiality is determined by "[t]he substantive law governing the case."  *Bouboulis v.*

*Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006).  An issue of fact is genuine if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).  "In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal citations omitted).


III.     **DISCUSSION**

   A.     **Counts One and Four:   First Amendment Retaliation**

        To pursue a claim for First Amendment retaliation, whether based on speech (Count One) or association (Count Four), a plaintiff must show that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999). In order to meet the causal-connection element of the test, a plaintiff must show that the defendant was aware of the protected speech.  *Id.* at 113.

        Plaintiff fails to present evidence that he engaged in a protected activity of which Defendant was aware.  In his opposition brief, he presents two protected activities: (1) membership in the PAC from 1980 through 2006; and (2) statements made by PAC members at Naugatuck Board of Education meetings, "pointing out the lack of minority faculty and any school programs or school events which were geared to the city's minority Portuguese student population."  Opp. Memo. at 9-10.

With respect to the first activity, Plaintiff presents no reason to believe that members of the Board knew about his affiliation with the PAC. He offers only his own bare assertion, in answers to interrogatories, that "[a]ll members of the Naugatuck Board of Education were aware of the plaintiff's membership status with the Portuguese Action Committee." Opp. Memo. at 11, Opp. Memo. Ex. 5 at 6. However, his unexplained assertion that he knows this is contradicted by his deposition testimony:

> Q.     So you have no way of knowing whether or not every member of the Board of Education in 2006 knew about your affiliation with the Portuguese Action Committee?
> A.     No. No, I do not. No, I do not.

Tavares Depo. 40:24-41:3. "[A] party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010). Thus, assuming without deciding that Plaintiff's interrogatory answer may properly be considered an affidavit in opposition to Defendant's summary judgment Motion, that answer cannot create an issue of fact about the Board's knowledge.

With respect to the second activity, Plaintiff presents no evidence that the Board associated Plaintiff himself with the statements made by PAC members. He does not assert that he was one of the PAC members who made those statements, nor does he provide any other reason why the Board would attribute those statements to him.

Because Plaintiff presents no evidence in favor of an essential element of the cause of action for First Amendment retaliation, summary judgment against Count One is appropriate.

## B.     Count Two:  Title VII Retaliation

As noted above, Plaintiff has waived opposition to the grant of summary judgment against Count Two. Also, even if Plaintiff had not waived this claim, it would suffer from the same

infirmity as the claim for First Amendment retaliation.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that the employer was aware of the protected activity.  *Lore v. City of Syracuse*, 370 F.3d 127, 157 (2d Cir. 2012).  Again, the only protected activity alleged is Plaintiff's involvement in the PAC, and he has provided no evidence that any member of the Board was aware of it.

### C.      Count Three

It is not clear what cause of action Plaintiff intends to bring in Count Three.  The count is labeled "FEPA retaliation."  This might imply that it is a claim for retaliation under CFEPA.  However, the statute cited in the text is 29 U.S.C. §§ 621-34, *i.e.*, the ADEA.  Moreover, he labels that statute "the Federal Employment Act."  In any event, Plaintiff does not provide a defense of that claim in his opposition brief.  As with Count Two, the claim has been waived.

### D.      Counts Five through Eight:  Racial and Age Discrimination under CFEPA, Title VII and the ADEA

Because courts look to interpretations of federal employment discrimination statutes in interpreting CFEPA, and because claims of discrimination under Title VII and the ADEA are analyzed through the familiar three-step burden-shifting framework, a single analysis covers Plaintiff's federal and state discrimination claims.  *See, e.g., Craine v. Trinity College*, 259 Conn. 625, 637 (2002).  The claims that Plaintiff labels "racial discrimination" are in fact claims of discrimination on the basis of national origin, *i.e.*, Portuguese.  In his brief, Plaintiff establishes that his discrimination claims are based entirely on the incident in June 2006 when Defendant chose Thomas Pompei over him for the position of Athletic Director/Director of Adult Education.  Opp. Memo. at 5-8.

-6-

To establish a *prima facie* case of employment discrimination under these statutes, a plaintiff must show that (1) he falls within the protected group, (2) he applied for a position for which he is qualified, (3) he was subject to an adverse employment decision, and (4) the decision was made under circumstances giving rise to an inference of employment discrimination. *Byrnie v. Town of Cromwell*, 243 F.3d 93, 101 (2d Cir. 2001). Defendant argues that Plaintiff provides no evidence that could give rise to an inference of discrimination based on his Portuguese ancestry or his age. Supp. Memo. at 16-17. Plaintiff's only response on this issue is to assert that preferential treatment given to Pompei raises an inference of discrimination. Opp. Memo. at 7. As evidence for this assertion, Plaintiff cites the "affidavits of Board members" contained in Exhibit A to Defendant's brief to show that the Board gave greater consideration to Pompei's qualifications than to Plaintiff's. However, those affidavits (the affidavits of Stephen Zepecki, Lori Ferreira, David M. Heller and Deborah Gilnack) do not contain any reason to believe that they did so. Nor does other evidence in the record provide a basis for such an inference. While Plaintiff emphasizes that Pompei lacked experience as an athletic director, he himself lacked experience in adult education. Tavares Depo. 34:9-20. As he put it in his deposition testimony, "to me, it's a wash." *Id.* It cannot be said on that basis that Pompei's lack of experience as an athletic director shows that Defendant must have given him preferential treatment. Thus, Plaintiff has not established a *prima facie* case for either national-origin or age discrimination.

Even if Plaintiff had established a *prima facie* case, he did not present evidence to defeat summary judgment the second or third stages of the burden-shifting analysis. When a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Byrnie* at 102. Defendant offers, as its legitimate reason for

the decision to hire Pompei, the assertion that Plaintiff's "experience, credentials and performance during neutrally conducted interviews revealed that he was not the most qualified candidate for either position." Supp. Memo. at 18; Supp. Memo. Ex. A, Affidavit of Lori Ferreira ("Ferreira Aff.") ¶ 11; Supp. Memo. Ex. A, Affidavit of David M. Heller ("Heller Aff.") ¶ 13; Supp. Memo. Ex. A, Affidavit of Deborah Gilnack ("Gilnack Aff.") ¶ 12.  This is a legitimate reason, and sufficient to meet Defendant's burden of production.

A defendant employer in a discrimination case "defeat[s] a rebuttable presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision." *Byrnie,* 243 F.3d at 102 (citations omitted).  "If the employer offers, via admissible evidence, a justification of its action which, if believed by a reasonable trier of fact, would allow a finding of no unlawful discrimination, then the *McDonnell Douglas* framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Id.* (internal quotation marks and brackets omitted).  In the case at bar, Defendant has offered such a justification, and moves on the strength of it for summary judgment dismissing Plaintiff's Complaint.  This Court's duty is clear enough: "At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer."  *Id.* (citations omitted). Plaintiff's burden is equally clear:  In the absence of "direct evidence of an improper discriminatory bias" (and in this case there is none), Plaintiff "must defeat summary judgment on the strength of his prima facie case combined with circumstantial evidence that [Defendant's] stated reason for failing to hire [Plaintiff] is pretext." *Id.*  And a plaintiff's burden in such circumstances is two-fold: He must point to evidence in the record "allowing a reasonable trier of fact to not only conclude the

employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." *Byrnie*, 243 F.3d at 103.

The Plaintiff at bar fails entirely to carry that burden. Plaintiff offers no significant evidence that age or national origin played a role in Defendant's decision, and indeed no argument on that point. Opp. Memo. at 7-8. Plaintiff offers a conclusory assertion from an employee of Defendant's that "I believe he was rejected for the permanent combined position of Athletic Director/Adult Education Director either because of his age or because he was Portuguese or both." Opp. Memo. Ex. 3, Affidavit of Robert Caouette ("Caouette Aff.") ¶ 9. But Caouette's only stated reason for thinking so is that Plaintiff "was the most qualified candidate." *Id.* In other words, Caouette presents no evidence regarding the role of either national origin or age in the decision. Nor does Caouette even claim to know which protected factor played a role in the decision. *Id.*

Although he does not offer these points in his opposition brief, Plaintiff makes two allegations regarding age in his Complaint. He alleges that his age "was brought up as a factor by David Heller, a member of the Board of Education," and that the chairman of the Board, Deborah Gilnack, referred to the retirement of eighteen teachers as a "mixed blessing" because Defendant would save $760,000 in salaries. Complaint ¶¶ 19-20. However, allegations in a complaint are not evidence. Moreover, Plaintiff testified in his deposition that Gilnack's remark did not have anything to do with age discrimination, and that Heller's question was about his experience and responsibilities, not his age. Tavares Depo. 56:7-14, 77:21-78:6. Nor would the remark Gilnack is alleged to have made indicate age discrimination, which involves not a desire to save money but an employer's inaccurate and stigmatizing stereotype that productivity and competence decline with old age. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Plaintiff dismisses Defendant's legitimate, non-discriminatory explanation as "not credible." Opp. Memo. at 7.  "In contrast to the plaintiff, Pompeii [sic.] had no actual experience directing high school athletics and he did not even [*sic.*] the academic qualifications, a Sixth-Year Administration degree."  *Id.*  In support of this assertion, he offers (1) another reference to the affidavits of Board members, which say nothing in support of these assertions, and (2) a statement from his deposition that Pompei lacked a sixth-year certificate.  Tavares Depo. 33:1-20.  With respect to lack of experience directing high school athletics, Plaintiff testified at his deposition that, considering his own lack of experience in adult education, "[t]o me, it's a wash."  Tavares Depo. 34:9-20.  With respect to the sixth-year certificate, Plaintiff offers only his own testimony that an administrator must have one.   Plaintiff's testimony is sparse; it does not even establish whether what is at issue is a license or a minimum educational qualification. *Id.* 33:11-17.  The miniscule quantum of evidence that Plaintiff presents against Defendant's employment explanation is not enough to create an issue of material fact about its nature (genuine or pretextual).,

Because Plaintiff does not present evidence to establish a *prima facie* case of national-origin or age discrimination and presents no significant evidence that either protected factor played a role in the decision at issue, summary judgment against these claims is appropriate.

### E.     Count Nine:  Intentional Infliction of Emotional Distress

Plaintiff claims that Defendant intentionally inflicted emotional distress on him when it gave the Athletic Director/Director of Adult Education position to Pompei.  Opp. Memo. at 12. Defendant presents two arguments for summary judgment against Plaintiff's intentional infliction claim.  First, Defendant argues that it is immune from liability for the intentional conduct of its employees.  Supp. Memo. at 24.   A municipality is not liable for the intentional torts of its

employees, including intentional infliction of emotional distress.  *Pane v. City of Danbury*, 267 Conn. 669, 685 (2004)**.**  "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by:  (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct."  Conn. Gen. Stat. § 52-557n(a)(2)(A).  That immunity applies to boards of education. *O'Connor v. Wethersfield Bd. of Educ.*, 90 Conn. App. 59, 64-65 (2005).  "Under Connecticut law, the term 'wilfulness' is synonymous with 'intentional.'"  *Pane* at 685.  This fact alone is enough to establish the appropriateness of summary judgment against this claim.

Second, Defendant argues that even if it were not immune, Plaintiff has not provided evidence of (or even alleged) the "extreme and outrageous conduct" necessary to support liability for intentional infliction of emotional distress. Opp. Memo. at 25-26.  Connecticut courts have made it clear that the high standard for "extreme and outrageous conduct" requires conduct far worse than any conduct alleged in this case.  *See*, *e.g.*, *Appleton v. Board of Educ.*, 254 Conn. 205, 210-12 (2000); *Tracy v. New Milford Pub. Schs.*, 101 Conn. App. 560, 570 (2007).  Plaintiff alleges no conduct in support of this claim other than Defendant's hiring of Pompei rather than him.  Opp. Memo. at 12-13.  If giving a position to one applicant rather than another is "extreme and outrageous conduct," then a high proportion of all hiring decisions constitute intentional infliction of emotional distress.   For this reason, as well, summary judgment against this claim is appropriate.

### F.    Count Ten:  Negligent Infliction of Emotional Distress

Plaintiff also claims that the Board's decision to give the position to Pompei rather than to him was negligent infliction of emotional distress. Opp. Memo. at 14-16. Defendant seeks summary judgment against this claim because (1) Plaintiff fails to allege that the specific conduct of a

particular defendant caused his distress, and (2) the conduct at issue did not arise in the termination process.  Supp. Memo. at 27.  The second of these points is sufficient to establish that summary judgment against this claim is appropriate.

Under Connecticut law, liability for negligent infliction of emotional distress must be based on unreasonable conduct of the defendant in the termination process.  *Perodeau v. City of Hartford*, 259 Conn. 729, 750 (2002).  More precisely, it may not be based on conduct within an ongoing employment relationship.  *Id.* at 758.  This is because the Connecticut Supreme Court has found that the social costs of allowing current employees to accumulate emotional distress claims would outweigh its benefits.  *Id.* at 759.

Plaintiff refers to Defendant's decision to hire Pompei rather than himself for the position as a "termination."  Opp. Memo. at 15.  However, Plaintiff testified that he was still a teacher for Defendant after it failed to give him the newly created position.  Tavares Depo. 59:2-10.  Thus, what occurred was, in *Perodeau*'s terms, an ongoing employment relationship, which implicates exactly the policy concerns that led the *Perodeau* court to limit such claims in the employment context to terminations.   *See Perodeau* at 757-59.  In the absence of a termination, as the *Perodeau* court understood the term, summary judgment against this claim is appropriate.

## IV.    CONCLUSION

For these reasons, summary judgment is appropriate against each of Plaintiff's claims.  Accordingly, Defendant's Motion for Summary Judgment [Doc. 24] is GRANTED in all respects.  The Clerk is directed to enter Judgment in favor of Defendant and against Plaintiff dismissing the Complaint, and to close the case.

It is SO ORDERED.
Dated: New Haven, Connecticut
April 25,  2012

    /s/ Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge